Hans N. Huggler
Alaska Bar #1505025
Borealis Benefits Law, Inc.
Attorneys for Plaintiffs

Telephone: 907-600-1711
Fax: 907-331-4601
Email: hans@erisaborealis.com
Mail: 522 W. Riverside Ave., Suite 5076
Spokane, WA 99201

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

AT KETCHICAN

| | |
|---|---|
| Victor Esposito and Cheri Esposito <br><br> Plaintiffs, <br><br> vs. <br><br> State Farm Fire and Casualty Company <br><br> Defendant | Case No.: 1:25-cv-00007 <br><br> COMPLAINT <br><br> JURY TRIAL DEMANDED |

This is an action by insureds Victor Esposito and Cheri Esposito ("the Espositos") against State Farm Fire and Casualty Company ("State Farm") for appointment of an umpire to resolve disputes over appraisal, breach of insurance

contract, negligent adjustment of claims, and breach of the duty of good faith and fair dealing arising out of State Farm's failure to timely investigate and indemnify them for a Ketchikan house fire loss.

## I. Parties

1. The Espositos own 410-412 Deermount Street in Ketchikan. At the time of the loss at issue they resided there. They are now residents of Arkansas.

2. Defendant State Farm is an Illinois insurance company licensed to issue property insurance in Alaska.

## II. Jurisdiction & Venue

3. The court has jurisdiction over this dispute pursuant to its 28 U.S.C. § 1332 diversity jurisdiction. All plaintiffs are residents of different states than defendant and the amount in controversy exceeds $75,000.

4. Venue is proper in this district and division because a significant portion of the events at issue occurred in or relate to Ketchikan, Alaska, including contracting to insure the home there, the subsequent loss, and State Farm's failure to adequately adjust the claim.

## III. Facts

5. In January 2023, the Espositos and two of their three children were living at 410-412 Deermount Street in Ketchikan. The home was a three-story structure built in

2019. The Espositos lived at 412 Deermount on the top two floors and the bottom floor was a separate unit addressed as 410 and rented to a tenant.

6. On January 30, 2023, a fire destroyed the Espositos' home and contents as well as the rental unit. The fire was caused by a neighbor, and the two-unit structure and contents were a total loss.

7. The home was insured by State Farm under policy 02-BP-D283-9. The policy is a contract of insurance between the parties.

8. Subject to its terms and conditions, the policy covered the loss of a dwelling and other structures under "Coverage A." Coverage A's policy limit for dwelling coverage is $671,800.

9. Subject to its terms and conditions, the policy covered the loss of personal property under "Coverage B." Coverage B's policy limit is $503,850.

10. Subject to its terms and conditions, the policy covered the loss of use of a dwelling and rental property under "Coverage C." Coverage C's policy limit is $201,540.

11. State Farm accepted coverage for losses under Coverages A, B, and C.

12. Based on its own estimate, State Farm had paid $432,282.51 on Coverage A by July 2023, inclusive of costs of demolition. This was unreasonably low as it was apparent that replacing the destroyed structure would cost substantially more. State Farm should have promptly settled Coverage A for policy limits.

13. To resolve the dispute over amount of loss on Coverage A, the Espositos invoked the policy's "appraisal clause" in February 2024.

14. Alaska law mandates inclusion of an appraisal clause in property insurance policies to provide a binding, extrajudicial means of resolving disputes over amount of loss. AS 21.96.035.

15. The Espositos did not know that the appraisal clause State Farm included in the policy does not conform to Alaska law. Alaska law requires that each party appoint an appraiser, who between them promptly appoint a neutral umpire to break deadlocks over valuations. The policy's clause requires the appraisers to attempt to agree on an umpire after disputes have arisen, and if they cannot agree on a neutral, to have the parties ask a court to appoint an umpire. The clause in the policy unlawfully forces an insured to retain counsel and take legal action to get a binding result, rather than have that process streamlined with a pre-selected umpire to resolve disputes.

16. Each party appointed appraisers. State Farm unreasonably delayed proceeding on the appraisal, with its appraiser telling the Espositos they were on the "back burner" while he helped "fellow Alaskans." The appraiser did not provide a "certified" appraisal to State Farm until

17. State Farm's appraiser estimated a Coverage A replacement value of $658,798.24, only about $13,000 below the policy limit for dwelling loss. The appraiser made this estimate without including the costs of replacing the dwelling's foundation,

which the appraiser asserts is "not normally covered." The Espositos' appraiser estimated the replacement value at more than one million dollars, including replacement of the foundation.

18. The parties' appraisers are deadlocked on the amount of loss and have been unable to agree on a neutral to resolve the disputes between them.

19. State Farm's appraiser made a coverage determination regarding replacement of the foundation in violation of the policy.

20. As to Coverage B, State Farm paid $151,155 by March 2023 for estimated personal property losses. The Espositos submitted an itemized claim for losses of $555,602.13 on December 19, 2023, and provided supplemental receipts when requested. Only when the Espositos retained counsel to prosecute the matter on their behalf in March 2025 did State Farm begin to pay substantive attention to their claim. Despite representations of "final review" State Farm has still failed to indemnify the Espositos for their documented losses in bad faith and breach of its contract.

21. As to Coverage C, State Farm had paid $27,229.74 by July 2023 and has paid no benefits since. A portion of that payment was for rental income losses associated with the 410 Deermount unit. Despite a policy limit of 12 months of coverage and the destruction of the rental unit, State Farm terminated rental income coverage after six months of payment. The Espositos are owed six additional months of rental loss

coverage. They are also owed for relocation expenses to their post-loss permanent residence submitted to State Farm in April 2025.

22. The Espositos have complied with all requirements of the policy.

23. The Espositos have consistently and repeatedly requested that State Farm take action to settle their claims, to no avail. At every turn, State Farm has delayed in providing responses or provided no responses at all to the Espositos, their public adjuster, or their counsel. The Espositos have no choice but to litigate to obtain the benefit of their insurance contract.

24. State Farm's conduct has been reckless, in disregard of the Espositos' rights, and financially motivated. State Farm is liable for punitive damages.

### IV. Causes of Action

#### A. Specific Performance – Appointment of Umpire

25. All the allegations above are hereby incorporated into this section.

26. State Farm and the Espositos are parties to the policy, which is a valid and enforceable contract.

27. The policy provides that the parties can resolve disputes over the amount of loss through a binding "appraisal" process. If the parties' appraisers are deadlocked and cannot agree on a neutral umpire to break the deadlock either party can seek court intervention appointing one.

28. The parties are deadlocked as to the actual replacement cost of the dwelling, and court intervention may be required. The parties have conferred on seeking court appointment of a neutral umpire.

29. Notwithstanding the failure of the appraisal clause to conform to Alaska law, the parties cannot go backwards and a court-appointed umpire is now the most prompt path to a resolution of Coverage A.

30. The appraisal clause is not intended to resolve disputes over coverage. If a dispute over coverage for the foundation and related portions of the covered dwelling exists, the Court should resolve that dispute.

31. The Court should enforce the parties' contract and appoint a qualified neutral umpire to resolve outstanding disputes over amount of loss to settle Coverage A.

### B. Breach of Contract

32. All the allegations above are hereby incorporated into this section.

33. State Farm has breached the policy by failing to pay benefits for covered losses on Coverages B and C.

34. State Farm's breach has economically damaged the Espositos by depriving them of coverage owed and the time value of money on delayed payments.

### C. Negligent Adjusting

35. All the allegations above are hereby incorporated into this section.

36. State Farm's adjusters and appraisers had a duty of reasonable care toward the Espositos. These adjusters and appraisers are agents of State Farm and it is liable for their negligence.

37. State Farm's adjusters and appraisers unreasonably and negligently delayed and are continuing to delay adjusting the Espositos' claim and unreasonably adjusted the the Espositos' Coverage A loss.

38. The adjusters' and appraisers' negligence has damaged the Espositos economically in the delay of indemnity owed in the need to hire an appraiser and legal counsel to obtain the benefit of their bargain.

39. The adjusters' and appraisers negligence has damaged the Espositos non-economically by inflicting stress, frustration, emotional distress, inconvenience and the loss of enjoyment of life on them.

### D. Breach of the Duty of Good Faith and Fair Dealing

40. All the allegations above are hereby incorporated into this section.

41. The policy is a contract and includes an obligation of good faith and fair dealing.

42. State Farm breached is duties of good faith and fair dealing to the Espositos in at least the following respects: 1) by including an appraisal clause in the policy that violates AS 21.96.035 and forces an insured to litigate to resolve disputes, 2) by failing to promptly acknowledge and respond to claims communications, 3) by failing to settle

Coverage A at policy limits when it was apparent such a settlement was appropriate, 4) and by unduly delaying and failing to promptly and equitably settle Coverages B and C despite State Farm's relatively clear liability.

43. State Farm has violated Alaska's Unfair Claim Settlement Practices statute (AS 21.36.125) in at least the following ways: in failing to acknowledge and act promptly upon communications regarding the claim, failing to adopt and implement reasonable standards for prompt investigation of claims, and in failing to attempt in good faith to make prompt and equitable settlement of claims in which liability is reasonably clear.

44. These breaches have economically and non-economically damaged the Espositos by depriving them of indemnity payments owed, the time value of money, and non-economically by inflicting stress, frustration, emotional distress, inconvenience and the loss of enjoyment of life on them.

## V. Prayer for Relief

Wherefore, Plaintiffs pray for the following relief:

a. Prompt resolution of any Coverage A disputes over coverage and appointment of a neutral umpire to resolve the parties' appraisal dispute.

b. Economic and non-economic damages in an amount to be determined by jury at trial but more than $75,000;

c. Punitive damages in an amount to be determined at trial;

d. Pre- and post-judgment interest as allowed by law;

e. Attorney fees and costs and disbursements as allowed by law;

f. Any further legal or equitable relief the Court finds warranted.

Dated this 4th day of June, 2025

/s/ *Hans Huggler*
Hans N. Huggler, Alaska Bar #1505025
Borealis Benefits Law, Inc.
Attorneys for Plaintiffs